# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES M. HAZLETT, | : |
| | : |
| Plaintiff, | : |
| | :    No. 02-CV-4840 |
| v. | : |
| | : |
| EXPRESSJET AIRLINES, INC. et al. | : |
| | : |
| Defendants. | : |

## <u>ORDER</u>

AND NOW, this      day of      , 2003, upon consideration of Defendant ExpressJet Airlines, Inc.'s Motion for Summary Judgment, and any response thereto, it is hereby ORDERED and DECREED that said Motion is GRANTED. All claim against Defendant ExpressJet Airlines, Inc. and hereby DISMISSED WITH PREJUDICE.

BY THE COURT:

_____

**HONORABLE J. CURTIS JOYNER**
**UNITED STATES DISTRICT JUDGE**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES M. HAZLETT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 02-CV-4840 |
| v. | : | |
| | : | |
| EXPRESSJET AIRLINES, INC. et al. | : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

## DEFENDANT EXPRESSJET AIRLINES, INC.'S
## MOTION FOR SUMMARY JUDGMENT

### I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    On July 19, 2002, Plaintiff, James M. Hazlett, commenced this action against Continental Airlines, Inc. with the filing of a Civil Complaint.  On September 26, 2002, an Amended Complaint was filed to correct the name of the Defendant to ExpressJet Airlines, Inc. ("ExpressJet").  See Amended Complaint, attached hereto as Exhibit "A".

2.    Plaintiff's Amended Complaint seeks damages for injuries allegedly sustained while Plaintiff was exiting an aircraft operated by ExpressJet.  See Amended Complaint, Exhibit "A".

3.    On August 31, 2000, Plaintiff, a school teacher for the Souderton Area School District, was a passenger on ExpressJet Flight #3582, traveling from Newark, New Jersey to Providence, Rhode Island.  See Amended Complaint, ¶ 7, Exhibit "A"; Deposition of James M. Hazlett ("Hazlett Deposition") at pp.16:21-24, 59:22-24, 60:1-9, attached hereto as Exhibit "B".

4.    Plaintiff was traveling with a friend, Beryl Martin.  See Hazlett Deposition at p. 60:14-21.

5.     August 31, 2000 was a "nice day weatherwise."  See Deposition of Louis Ianella ("Ianella Deposition") at p.36:22-25, attached hereto as Exhibit "C".  There was no rain and the sun was out when Flight #3582 landed.  Id.

6.     An ATR-72 aircraft, manufactured by Aerospatiale, was used to operate Flight #3582.  See Affidavit of Steve Donohue, attached hereto as Exhibit "D".

7.     The passengers on Flight #3582 deplaned the ATR-72 by using an integral staircase built into the cabin door.  See Affidavit, Exhibit "D".

8.     The ATR-72 operated for Flight #3582 utilized a staircase with a single handrail.

9.     The design of the staircase on the ATR-72 is tightly controlled by the Federal Aviation Administration (FAA) regulations that strictly define their allowable tolerances. See Affidavit, Exhibit "D".  ExpressJet does not have the abilities to design such a integral staircase and must rely entirely upon Aerospatiale to provide aircraft components meeting these stringent FAA requirements.  Id.

10.     The flight stairs on the ATR-72 exceed the minimum performance criteria set forth by the FAA and have been approved by the FAA for the use in which ExpressJet employs them.  See Affidavit, Exhibit "D".

11.     There is no FAA or manufacturer requirement that the stairway utilize two handrails.  See Affidavit, Exhibit "D".

12.     When Flight #3582 arrived in Providence, ExpressJet ramp agent Rick Duda was stationed at the bottom of the aircraft stairs to offer passengers assistance in deplaning if they needed it.  See Deposition of Richard Duda ("Duda Deposition") at p. 12:15-18, attached hereto as Exhibit "E".

2

13.    Based on his ten years experience as a ramp agent, Mr. Duda was able to discern when passengers needed assistance deplaning.  See Duda Deposition at pp. 8:25, 12:21-25, 19:9-21, Exhibit "E".

14.    For example, if a passenger grabbed the bulkhead of the aircraft with his left hand, Mr. Duda would know that the passenger was unsure and needed assistance.  See Duda Deposition at p.12:21-25, Exhibit "E".  In addition, if the flight attendant advised Mr. Duda that a passenger needed assistance or if a passenger had a cane, Mr. Duda would know that the passenger needed assistance.  Id. at p.19:9-21.

15.    Roughly half the passengers had safely deplaned when Plaintiff began his descent down these stairs.  See Hazlett Deposition at p.73:21-24, Exhibit "B".

16.    Based on his experience, Mr. Duda knew that Plaintiff did not need assistance because Plaintiff did not ask for assistance and because Plaintiff did not grab the bulkhead with his left hand.  See Duda Deposition at pp.25:5-10, 29:6-8, Exhibit "E".

17.    Plaintiff testified he had flown "numerous times" prior to August 31 2000.  See Hazlett Deposition at p.62:20-24, Exhibit "B".

18.    Plaintiff was approximately three-quarters of the way down the staircase when Mr. Duda observed Plaintiff's body stiffen.  See Duda Deposition at p.25:11-17, Exhibit "E".  Plaintiff's right hand and wrist bent backwards and his eyes rolled up into his head.  Id. at pp.25:11-17, 30:11-21.  Plaintiff's legs did not bend to go down any of the stairs, but rather Plaintiff "just leaned over and fell on his face."  Id. at p.25:16-17.

19.    Ramp Agent Louis Ianella likewise saw Plaintiff fall face first on the ground and noted that Plaintiff's hands were "folded back in a backwards fashion."  See Ianella Deposition at p.37:21-24, attached hereto as Exhibit "C".  Mr. Ianella testified that Plaintiff made "no effort to whatsoever to break his fall."  Id. at p.30:23-25 – 31:1-4.

3

20.    The deposition testimony of Mr. Duda and Mr. Ianella is consistent with written statements both gentlemen made on the date of the incident, August 31, 2000.  See Statement of Rick Duda, attached hereto as Exhibit "F" and Statement of Louis Ianella, attached hereto as Exhibit "G".

21.    After his fall, Plaintiff was taken to Rhode Island Hospital. See Rhode Island Hospital Consultation Reports ("Consultation Reports"), attached hereto as Exhibit "H".

22.    Emergency room records note that Plaintiff's traveling companion, Ms. Martin, saw Plaintiff stiffen, place his arms straight along his sides, and fall straight, face first onto the tarmac, without any effort to buffer the fall.  See Consultation Reports, Exhibit "H". The records also note that Plaintiff lost control of his bladder.  Id.

23.    The impression of Plaintiff's injury was an episode consistent with tonic seizure and subsequent head trauma. See Consultation Reports, Exhibit "H".

24.    The Rhode Island Hospital records also noted that Plaintiff drank 3-4 alcoholic drinks per day and the emergency room physician recommended that Plaintiff be evaluated for alcohol withdrawal. See Consultation Reports, Exhibit "H".

25.    Records also note that Plaintiff had used marijuana one week prior to the incident. See Consultation Reports, Exhibit "H".

26.    Plaintiff testified that at times, prior to the accident, he drank four to five drinks per day. See Hazlett Deposition at p.83:19-24, Exhibit "B".  Plaintiff also testified that he used marijuana once or twice a week up until the time of the accident. See Hazlett Deposition at pp.86:21-24, 87:1-6, Exhibit "B".

27.    In his Amended Complaint, Plaintiff alleges that the negligence of ExpressJet caused his injuries, specifically negligence with respect to ExpressJet's operation of

the stairway without a second handrail and ExpressJet's deplaning procedures.  See Amended Complaint, Exhibit "A".

## II.    LEGAL ARGUMENT

### A.    Standard for Summary Judgment

28.    Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  F.R.C.P. 56(c); Technology Based Solutions, Inc. v. Electronics College, Inc., 168 F.Supp.2d 375, 378 (E.D. Pa. 2001).

29.    In responding to a motion for summary judgment, the non-moving party "cannot rely on conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Technology Based Solutions, 168 F.Supp.2d at 378.  Rather, the non-moving party must "establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file."  Id.

### B.    Plaintiff's Claims are Barred in Their Entirety by the Federal Aviation Act.

30.    Congress has the power under the Supremacy Clause of the Constitution to preempt state law.  U.S. Const. Art. VI, cl. 2.

31.    Congress' intent to preempt state law may be express or implied.  Fidelity Fed. Sav. & Loan Assoc. v. de la Cuesta, 458 U.S. 141, 153 (1982).

32.    In the absence of an express congressional command, state law will be preempted if it actually conflicts with federal law or if federal law is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."  Fidelity Fed. Sav. & Loan Assoc., 458 U.S. at 153 (citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

33.    With respect to aviation, Congress enacted the Federal Aviation Act of 1958, codified as amended at 49 U.S.C. §§ 40101-49105 ("FAA"), in order to provide a "uniform and exclusive system of federal regulation" of air safety and flight operations. City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 639 (1973).

34.    Several courts, including the Third Circuit, have acknowledged that "Congress, in enacting the FAA and relevant regulations, intended generally to preempt state and territorial regulation of aviation safety." Abdullah v. American Airlines, Inc., 181 F.3d 363, 367 (3d Cir. 1999); French v. Pan Am Express, Inc., 869 F.2d 1, 5 (1st Cir. 1989) ("there can be scant doubt that Congress intended fully to occupy the relevant field"); Curtin v. Port Authority of New York, 183 F.Supp.2d 464 (S.D. N.Y. 2002).

35.    In Abdullah, the Third Circuit held the entire field of aviation regulation was preempted by the FAA and relevant federal regulations. 181 F.3d at 368, 371.

36.    Thus, within the aviation field, the standard of care applicable in any case must be provided by federal and not state law, to provide "one, consistent means of regulating aviation safety." Abdullah, 181 F.3d at 372.

37.    Indeed, it would be impossible for airlines to operate in a national patchwork of conflicting and contradictory state regulation. See Abdullah, 181 F.3d at 370 (citing British Airways Bd. v. Port Authority of New York, 558 F.2d 75, 83 (2nd Cir. 1977) ("without federal preemption, 'the likelihood of multiple, inconsistent rules would be a dagger pointed at the heart of commerce – and the rule applied might come literally to depend on which way the wind was blowing.'").

38.    Following Abdullah, this Honorable Court held that state negligence claims were preempted by the FAA. See Margolies-Mezvinsky v. U.S. Air Corp., 2000 U.S. Dist. LEXIS 736 (E.D. Pa. Jan. 28, 2000) (granting summary judgment in favor of airline

6

because plaintiff's claims "cannot be based upon a state law standard of care, because the FAA Act preempts the entire field of airline safety").

39.    Here, Plaintiff's only assertions against ExpressJet are Pennsylvania common law negligence claims.

40.    Plaintiff's state law claims of negligence clearly impact upon ExpressJet's aircraft operation and deplaning procedures, areas which are under the exclusive control of the Federal Aviation Administration and federal regulations.  Such areas are entirely preempted by federal law.  See Abdullah, Margolies-Mezvinsky, *supra*.

41.    Plaintiff has failed to allege the violation of a federal standard of care. Furthermore, discovery is now over in this case and Plaintiff has failed to serve an expert report, or any other evidence, setting forth a violation of a federal standard of care.

42.    Plaintiff's state law negligence claims are preempted under the doctrine of field preemption, and therefore, ExpressJet is entitled to summary judgment as a matter of law.

**C.    Plaintiff Cannot Establish that Defendant's Conduct Caused His Injuries.**

43.    While this action is preempted under federal law in its entirety, even under Pennsylvania common law, Plaintiff has failed to assert a viable claim.

44.    To maintain a cause of action for negligence, Plaintiff must establish the existence of a duty, a breach of that duty, a causal connection between the defendant's conduct and the resulting injury, and actual damages. Galullo v. Federal Express Corp., 937  F. Supp. 392, 394 (E.D. Pa. 1996) (*citing* Morena v. South Hills Health System, 501 Pa. 634, 642 n.5, 462 A.2d 680, 684 n.5 (1983)).

45.    With respect to causation, it is "incumbent on a plaintiff to establish a causation connection between defendant's conduct . . . [and such conduct] must be shown to

7

have been the proximate cause of plaintiff's injury." Galullo, 937 F. Supp. at 394 (*citing* Hamil
v. Bashline, 481 Pa. 256, 264, 392 A.2d 1280, 1284 (1978)).

46.    Proximate cause "assumes the presence of cause in fact and serves as a
means by which courts are able to place practical limits on liability as a matter of policy."
Galullo, 937 F. Supp. at 395.

47.    To establish proximate cause, the plaintiff must demonstrate that "the
nexus between a defendant's wrongful acts or omissions and the injury sustained is of such a
nature that it is socially and economically desirable to hold that defendant liable." Galullo, 937
F. Supp. at 395 (noting plaintiff bears burden of establishing causation by a preponderance of
evidence).

48.    Here, Plaintiff cannot prove that ExpressJet's conduct caused his injuries.

49.    It is equally plausible, if not more so, that Plaintiff's injury was the result
of a medical condition, such as a seizure (as indicated in the Rhode Island medical records) or
the effects of alcohol withdrawal. Moreover, it is equally plausible that Plaintiff simply tripped
over his own two feet.

50.    Since Plaintiff is unable to show that any conduct of ExpressJet was so
closely connected to Plaintiff's injuries to justify the imposition of liability, ExpressJet is entitled
to summary judgment as a matter of law.

WHEREFORE, for all the reasons set forth above and in the accompanying memorandum of law, Defendant ExpressJet Airlines, Inc., respectfully requests that this Honorable Court grant its Motion for Summary Judgment and enter an order dismissing all claims against Defendant ExpressJet Airlines, Inc. with prejudice.

Respectfully submitted,

COZEN O'CONNOR

BY: _____

Ann Thornton Field, Esquire
Identification No. 52130
Denise H. Houghton, Esquire
Identification No. 54989
Sara Anderson Frey, Esquire
Identification No. 82835
1900 Market Street, The Atrium
Philadelphia, PA  19103
(215) 665-2000

Date:  July 25, 2003

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES M. HAZLETT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 02-CV-4840 |
| v. | : | |
| | : | |
| EXPRESSJET AIRLINES, INC. et al. | : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**EXPRESSJET AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Defendant ExpressJet Airlines, Inc. ("ExpressJet") moves to dismiss this action filed against it by Plaintiff James M. Hazlett. The Third Circuit and this Honorable Court have held that the entire field of aviation safety is reserved to the federal government so that law governing interstate travel can be consistently and uniformly applied. This means that the standard of care that an interstate airline must adhere to must be established by <u>federal</u> law. In this case, Plaintiff has not alleged the violation of a federal standard of care, but rather has asserted common law <u>state</u> tort claims. Since such claims are preempted, summary judgment must be entered in favor of ExpressJet.

Alternatively, while Plaintiff's claims are preempted by federal law, even under Pennsylvania common law, Plaintiff has failed to assert a viable claim. Plaintiff cannot establish that the actions of ExpressJet caused his injuries. Plaintiff's causation claims are based on pure speculation. Therefore, Plaintiff cannot establish one of the essential elements of a negligence claim – causation – and summary judgment must be entered in favor of ExpressJet.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2002, Plaintiff, James M. Hazlett, commenced this action against Continental Airlines, Inc. with the filing of a Civil Complaint.  On September 26, 2002, an Amended Complaint was filed to correct the name of the Defendant to ExpressJet Airlines, Inc. ("ExpressJet").  See Amended Complaint, attached hereto as Exhibit "A".  Plaintiff's Amended Complaint seeks damages for injuries allegedly sustained while Plaintiff was exiting an aircraft operated by ExpressJet.  Id.

On August 31, 2000, Plaintiff, a school teacher for the Souderton Area School District, was a passenger on ExpressJet Flight #3582, traveling from Newark, New Jersey to Providence, Rhode Island.  See Amended Complaint, ¶ 7, Exhibit "A"; Deposition of James M. Hazlett ("Hazlett Deposition") at pp.16:21-24, 59:22-24, 60:1-9, attached hereto as Exhibit "B".  Plaintiff was traveling with a friend, Beryl Martin.  See Hazlett Deposition at p. 60:14-21. August 31, 2000 was a "nice day weatherwise."  See Deposition of Louis Ianella ("Ianella Deposition") at p.36:22-25, attached hereto as Exhibit "C".  There was no rain and the sun was out when Flight #3582 landed.  Id.

An ATR-72 aircraft, manufactured by Aerospatiale, was used to operate Flight #3582.  See Affidavit of Steve Donohue, attached hereto as Exhibit "D".  The passengers on Flight #3582 deplaned the ATR-72 by using an integral staircase built into the cabin door.  Id. The ATR-72 operated for Flight #3582 utilized a staircase with a single handrail.  The design of the staircase on the ATR-72 is tightly controlled by the Federal Aviation Administration (FAA) regulations that strictly define their allowable tolerances.  Id.  ExpressJet does not have the abilities to design such a integral staircase and must rely entirely upon Aerospatiale to provide aircraft components meeting these stringent FAA requirements.  Id.  The flight stairs on the ATR-72 exceed the minimum performance criteria set forth by the FAA and have been approved

by the FAA for the use in which ExpressJet employs them.  Id.  There is no FAA or manufacturer requirement that the stairway utilize two handrails.  Id.

When Flight #3582 arrived in Providence, ExpressJet ramp agent Rick Duda was stationed at the bottom of the aircraft stairs to offer passengers assistance in deplaning if they needed it.  See Deposition of Richard Duda ("Duda Deposition") at p. 12:15-18, attached hereto as Exhibit "E".  Based on his ten years experience as a ramp agent, Mr. Duda was able to discern when passengers needed assistance deplaning.  See Duda Deposition at pp. 8:25, 12:21-25, 19:9-21, Exhibit "E".  For example, if a passenger grabbed the bulkhead of the aircraft with his left hand, Mr. Duda would know that the passenger was unsure and needed assistance.  Id. at p.12:21-25.  In addition, if the flight attendant advised Mr. Duda that a passenger needed assistance or if a passenger had a cane, Mr. Duda would know that the passenger needed assistance.  Id. at p.19:9-21.

Roughly half the passengers had safely deplaned when Plaintiff began his descent down these stairs.  See Hazlett Deposition at p.73:21-24, Exhibit "B".  Based on his experience, Mr. Duda knew that Plaintiff did not need assistance because Plaintiff did not ask for assistance and because Plaintiff did not grab the bulkhead with his left hand.  See Duda Deposition at pp.25:5-10, 29:6-8, Exhibit "E".  Plaintiff testified he had flown "numerous times" prior to August 31 2000.  See Hazlett Deposition at p.62:20-24, Exhibit "B".

Plaintiff was approximately three-quarters of the way down the staircase when Mr. Duda observed Plaintiff's body stiffen.  See Duda Deposition at p.25:11-17, Exhibit "E".  Plaintiff's right hand and wrist bent backwards and his eyes rolled up into his head.  Id. at pp.25:11-17, 30:11-21.  Plaintiff's legs did not bend to go down any of the stairs, but rather Plaintiff "just leaned over and fell on his face."  Id. at p.25:16-17.  Ramp Agent Louis Ianella likewise saw Plaintiff fall face first on the ground and noted that Plaintiff's hands were "folded

3

back in a backwards fashion." <u>See</u> Ianella Deposition at p.37:21-24, attached hereto as Exhibit "C". Mr. Ianella testified that Plaintiff made "no effort to whatsoever to break his fall." <u>Id.</u> at p.30:23-25 – 31:1-4. The deposition testimony of Mr. Duda and Mr. Ianella is consistent with written statements both gentlemen made on the date of the incident, August 31, 2000. <u>See</u> Statement of Rick Duda, attached hereto as Exhibit "F" and Statement of Louis Ianella, attached hereto as Exhibit "G".

After his fall, Plaintiff was taken to Rhode Island Hospital. <u>See</u> Rhode Island Hospital Consultation Reports ("Consultation Reports"), attached hereto as Exhibit "H". Emergency room records note that Plaintiff's traveling companion, Ms. Martin, saw Plaintiff stiffen, place his arms straight along his sides, and fall straight, face first onto the tarmac, without any effort to buffer the fall. <u>See</u> Consultation Reports, Exhibit "H". The records also note that Plaintiff lost control of his bladder. <u>Id.</u> The impression of Plaintiff's injury was an episode consistent with tonic seizure and subsequent head trauma. <u>Id.</u>

The Rhode Island Hospital records also noted that Plaintiff drank 3-4 alcoholic drinks per day and the emergency room physician recommended that Plaintiff be evaluated for alcohol withdrawal. <u>See</u> Consultation Reports, Exhibit "H". Records also note that Plaintiff had used marijuana one week prior to the incident. <u>Id.</u> Plaintiff testified that at times, prior to the accident, he drank four to five drinks per day. <u>See</u> Hazlett Deposition at p.83:19-24, Exhibit "B". Plaintiff also testified that he used marijuana once or twice a week up until the time of the accident. <u>See</u> Hazlett Deposition at pp.86:21-24, 87:1-6, Exhibit "B".

In his Amended Complaint, Plaintiff alleges that the negligence of ExpressJet caused his injuries. Specifically, Plaintiff asserts negligence with respect to ExpressJet's operation of the stairway without a second handrail and ExpressJet's deplaning procedures. <u>See</u> Amended Complaint, Exhibit "A". For the following reasons, Plaintiff cannot maintain state

common law claims against ExpressJet and therefore, ExpressJet is entitled to summary judgment as a matter of law.

## III.    LEGAL ARGUMENT

### A.    Standard for Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c); Technology Based Solutions, Inc. v. Electronics College, Inc., 168 F.Supp.2d 375, 378 (E.D. Pa. 2001). In responding to a motion for summary judgment, the non-moving party "cannot rely on conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Technology Based Solutions, 168 F.Supp.2d at 378. Rather, the non-moving party must "establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file." Id.

In this case, Plaintiff cannot assert state common law claims against this interstate airline. Since Plaintiff has failed to plead a violation of a standard of care established by federal law, Plaintiff cannot establish a cognizable claim and summary judgment must be entered for ExpressJet.

### B.    Plaintiff's Claims are Barred in Their Entirety by the Federal Aviation Act.

In his Amended Complaint, Plaintiff alleges state common law negligence claims. See Amended Complaint, Exhibit "A". Since Congress, and this Honorable Court, have determined that such claims are preempted by the Federal Aviation Act, Plaintiff's claims are barred.

Congress has the power under the Supremacy Clause of the Constitution to preempt state law. U.S. Const. Art. VI, cl. 2. Congress' intent to preempt state law may be

express or implied.  Fidelity Fed. Sav. & Loan Assoc. v. de la Cuesta, 458 U.S. 141, 153 (1982).

In the absence of an express congressional command, state law will be preempted if it actually

conflicts with federal law or if federal law is "so pervasive as to make reasonable the inference

that Congress left no room for the States to supplement it."  Id. (citing Rice v. Santa Fe Elevator

Corp., 331 U.S. 218, 230 (1947)).

With respect to aviation, Congress enacted the Federal Aviation Act of 1958,

codified as amended at 49 U.S.C. §§ 40101-49105 ("FAA"), in order to provide a "uniform and

exclusive system of federal regulation" of air safety and flight operations.  City of Burbank v.

Lockheed Air Terminal, Inc., 411 U.S. 624, 639 (1973).  Several courts, including the Third

Circuit, have acknowledged that "Congress, in enacting the FAA and relevant regulations,

intended generally to preempt state and territorial regulation of aviation safety."  Abdullah v.

American Airlines, Inc., 181 F.3d 363, 367 (3d Cir. 1999); French v. Pan Am Express, Inc., 869

F.2d 1, 5 (1st Cir. 1989) ("there can be scant doubt that Congress intended fully to occupy the

relevant field"); Curtin v. Port Authority of New York, 183 F.Supp.2d 464 (S.D. N.Y. 2002).

Thus, federal law must establish the "standard of care" in any "aviation negligence action."

Abdullah, 181 F.3d at 371.

In Abdullah, the plaintiffs brought suit against American Airlines, seeking

recovery for injuries they received during a turbulent flight.  The district court held that the

plaintiffs' claims were preempted by the FAA, however, at the plaintiffs' request, the court

certified the question to the Third Circuit.  In examining whether the plaintiffs' claims were

preempted, the Third Circuit noted that Congress' "purpose in enacting the FAA was 'to promote

safety in aviation and thereby protect the lives of persons who travel on board aircraft.'"  Id. at

368 (citing In re Mexico City Aircrash of October 31, 1979, 708 F.2d 400, 406 (9th Cir. 1983)).

6

Congress determined that "the creation of a single, uniform system of regulation [was] vital to increasing air safety." Id. at 368.

Having found that Congress intended to "rest sole responsibility for supervising the aviation industry with the federal government", the Third Circuit held the entire field of aviation regulation was preempted by the FAA and relevant federal regulations. Id. at 368, 371. Specifically, the court held:

> the FAA and relevant federal regulations establish complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, jurisdictions . . . we hold that **federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation.**

Id. at 367 (emphasis added). The Abdullah court held that the scope of preemption under the FAA extended to the "standards of care" or "duty" applicable in the aviation safety context. Id. at 371. Thus, within the aviation field, the standard of care applicable in any case must be provided by federal and not state law, to provide "one, consistent means of regulating aviation safety." Id. at 372.[1]

Indeed, it would be impossible for airlines to operate in a national patchwork of conflicting and contradictory state regulation. Common sense dictates that an airline could not function in interstate commerce if its actions were judged by fifty different and shifting standards of care for aviation negligence actions. "[W]ithout federal preemption, 'the likelihood of multiple, inconsistent rules would be a dagger pointed at the heart of commerce – and the rule

---

[1]    If a violation of a standard of care provided by federal law is established, a plaintiff may seek whatever remedies are permitted by the applicable states' laws. Id. at 368. The essential requisite, however, to a cause of action within the aviation field is the violation of a federal standard of care.

applied might come literally to depend on which way the wind was blowing.'" Abdullah, 181 F.3d at 370 (*citing* British Airways Bd. v. Port Authority of New York, 558 F.2d 75, 83 (2nd Cir. 1977)).

Following Abdullah, this Honorable Court held that state negligence claims were preempted by the FAA. In Margolies-Mezvinsky v. U.S. Air Corp., 2000 U.S. Dist. LEXIS 736 (E.D. Pa. Jan. 28, 2000), the plaintiff brought state negligence claims against U.S. Air to recover for injuries received when a piece of luggage fell from an overhead luggage compartment and struck the plaintiff. This Court correctly noted that the plaintiff's claims "cannot be based upon a state law standard of care, because the FAA Act preempts the entire field of airline safety." Id. at *6. Since the plaintiff failed to present any evidence of a violation of a standard of care created by federal law, this Court properly granted U.S. Air's motion for summary judgment.

Here, Plaintiff's only assertions against ExpressJet are Pennsylvania common law negligence claims. Specifically, Plaintiff alleges that ExpressJet's operation of the stairway was negligent because the stairway had only one handrail and also that ExpressJet was negligent in its deplaning procedures. With these negligence claims, Plaintiff is seeking to imposed a state defined standard of care of ExpressJet's aircraft operation and deplaning procedures. Such state regulation of standards of care is wholly improper and subject to preemption.

The operation of all aircraft is governed by the Federal Aviation Administration which must certify all aircraft as airworthy before an aircraft may fly. See 49 U.S.C.A. § 41101(a)(1) (air carrier may provide air transportation only if carrier holds certificate authorizing such); 49 U.S.C.A. § 44711(a)(1) (prohibiting operation of aircraft without airworthiness certificate); see also Northwest Airlines, Inc. v. State of Minnesota, 322 U.S. 292 (1944) (Jackson, J., concurring) (noting federal control of aircraft is "intensive and exclusive" as aircraft "move only by federal permission, subject to federal inspection"). The ATR-72 aircraft

8

at issue here was certified as airworthy by the Federal Aviation Administration.  Otherwise, the aircraft would not have been permitted to fly on August 31, 2000, the date Plaintiff was injured.

Likewise, the design integral stairs on the ATR-72, which were designed by Aerospatiale and not ExpressJet, is tightly controlled by FAA regulations that strictly define their allowable tolerances.  See Affidavit, Exhibit "D"; 14 C.F.R § 25, et seq.  External cabin doors must be "reasonably free from jamming as a result of fuselage deformation in an emergency landing."  See Affidavit, Exhibit "D"; 14 C.F.R. § 25.783(c).  If "an integral stair is installed at a passenger entry door, the stair must be designed so that, when subjected to the inertia loads resulting from the ultimate static load factors in § 25.561(b)(3)" and following the collapse of one or more legs of the landing gear, it will not reduce the effectiveness of emergency egress through the passenger door.  See Affidavit, Exhibit "D"; 14 C.F.R. § 25.783(i).

The cabin door, frame, and flight stairs of the ATR-72 are designed to withstand the above mandated FAA design and testing requirements, as well as other FAA requirements not specified here.  See Affidavit, Exhibit "D". Technical requirements with regards to the ATR-72 are all dictated by the FAA.  Id.  The ATR-72 flight stairs exceed the minimum performance criteria set forth by the FAA and have been approved by the FAA for the use in which ExpressJet employs them.  Id.  There is no FAA or manufacturer requirement that the flight stairway utilize two handrails.  Id.

Plaintiff's claims of negligence clearly impact upon ExpressJet's aircraft operation and deplaning procedures, areas which are under the exclusive control of the Federal Aviation Administration and federal regulations.  Such areas are entirely preempted by federal law.  See Abdullah, Margolies-Mezvinsky, supra.

Plaintiff has failed to allege the violation of a federal standard of care.  The Amended Complaint does not allege the existence of a single federal statute or federal standard

9

of care which ExpressJet is alleged to have violated.  See Amended Complaint, Exhibit "A".
Furthermore, discovery is now over in this case and Plaintiff has failed to serve an expert report,
or any other evidence, setting forth a violation of a federal standard of care.

Plaintiff's state law negligence claims are preempted under the doctrine of field
preemption.  It is clear that in enacting the FAA, Congress intended to thoroughly occupy the
field of aviation and "left no room for the States to supplement it."  See Fidelity Fed. Sav. &
Loan, supra.  Since Plaintiff has failed to allege, much less establish, the violation of a federal
standard of care, Plaintiff's claims are preempted.  Therefore, ExpressJet is entitled to summary
judgment as a matter of law.

**C.    Plaintiff Cannot Establish that Defendant's Conduct Caused His Injuries.**

While this action is preempted under federal law in its entirety, even under
Pennsylvania common law, Plaintiff has failed to assert a viable claim.  Specifically, Plaintiff
cannot establish that ExpressJet's conduct caused his injuries and therefore, Plaintiff cannot
establish one of the essential elements of his cause of action – causation.

To maintain a cause of action for negligence, Plaintiff must establish the existence
of a duty, a breach of that duty, a causal connection between the defendant's conduct and the
resulting injury, and actual damages. Galullo v. Federal Express Corp., 937  F. Supp. 392, 394
(E.D. Pa. 1996) (citing Morena v. South Hills Health System, 501 Pa. 634, 642 n.5, 462 A.2d
680, 684 n.5 (1983)).  With respect to causation, it is "incumbent on a plaintiff to establish a
causation connection between defendant's conduct . . . [and such conduct] must be shown to
have been the proximate cause of plaintiff's injury."  Id. at 394 (citing Hamil v. Bashline, 481
Pa. 256, 264, 392 A.2d 1280, 1284 (1978)).

Proximate cause "assumes the presence of cause in fact and serves as a means by
which courts are able to place practical limits on liability as a matter of policy."  Galullo, 937 F.

Supp. at 395. To establish proximate cause, the plaintiff must demonstrate that "the nexus between a defendant's wrongful acts or omissions and the injury sustained is of such a nature that it is socially and economically desirable to hold that defendant liable." Id. at 395 (noting plaintiff bears burden of establishing causation by a preponderance of evidence).

It is well established that the "mere happening of an accident is not evidence or proof of negligence on the part of anyone." Galullo, 937 F. Supp. at 397. To the contrary,

> **What is required is evidence**, which means some form of proof; and it must be evidence from which reasonable person may conclude that, upon the whole, it is more likely that the event was caused by negligence than it was not. **As long as the conclusion is a matter of mere speculation or conjecture, or where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that the burden of proof has not been sustained**.

Id. at 397 (emphasis added) (*citing* Prosser and Keeton on Torts, § 39, at p. 242 (5th ed. 1984)); see also Fedircyzk v. Carnival Cruise Lines, Ltd., 82 F.3d 69, 75 (3d Cir. 1996) ("mere possibility of causation is not enough").

In Galullo, the plaintiff sued a delivery service for injuries she sustained after she allegedly slipped and fell on a letterpack which was delivered to her home. The plaintiff presented no evidence that the letterpack caused her fall other than stating what she slipped on felt like something wet. There was other evidence, however, that wet leaves and a worn rug were found in the area whether the plaintiff fell. Based on the record, the court found that there were several equally plausible possibilities as to what caused the plaintiff's fall. Galullo, 937 F. Supp. at 397 (stating that while it was possible that letterpack caused fall, it was equally possible fall was caused by leaves or rug). Since the plaintiff's claims that she fell on the letterpack were

11

"nothing more than pure speculation and conjecture", the court entered summary judgment in favor of the defendant.[2] Id. at 399.

Here, Plaintiff cannot prove that ExpressJet's actions caused his injuries. Plaintiff does not recall falling. See Hazlett Deposition, p. 72:21-22, Exhibit "B". In fact, when questioned about the incident, Plaintiff testified as follows:

> Q: Do you recall falling?
>
> A: No.
>
> Q: Do you recall looking down before you fell?
>
> A: No.
>
> Q: Do you believe you tripped over anything?
>
> A: I can't say for certain.

See Hazlett Deposition, at p.72:21-24; p.73:1-4. Based on Plaintiff's own testimony, it is clear that Plaintiff simply does not know what caused him to fall off the stairs.

Ramp agent Rick Duda, who was positioned at the bottom of the staircase, observed Plaintiff's body stiffen prior to the fall. See Duda Deposition at p.25:11-17, Exhibit "E". Mr. Duda also observed Plaintiff's right hand and wrist bend backwards and his eyes roll up into his head. Id. at pp.25:11-17, 30: 11-21. Both ramp agent Rick Duda and ramp agent Louis Ianella saw Plaintiff fall face first, making no effort whatsoever to break his fall. See Duda Deposition at p.25:16-17; Ianella Deposition at pp.30:23-25 – 31:1-4. Ramp agent Louis Ianella observed Plaintiff after he fell and noted that Plaintiff's hands were "folded back in a backwards fashion." See Ianella Deposition at p.37:21-24.

---

[2]    In doing so, the court noted that "a jury is not permitted to speculate or guess since conjecture, guess or suspicion do not amount to proof." Galullo, 937 F. Supp. at 398. Since such speculation is not permitted, the court determined summary judgment was appropriate.

Medical records from Rhode Island Hospital, where Plaintiff was taken immediately after the incident, indicate that Plaintiff's friend, Ms. Martin, saw Plaintiff stiffen, place his arms straight along his sides, and fall straight, face first onto the tarmac, without any effort to buffer the fall. See Consultation Reports, Exhibit "H". The impression of Plaintiff's injury was an episode consistent with tonic seizure and subsequent head trauma. Id. Plaintiff was also evaluated for alcohol withdrawal and the Rhode Island Hospital records noted that Plaintiff drank 3-4 drinks per day and had used marijuana in the past. Id. Plaintiff testified that at times, prior to the accident, he drank four to five drinks per day and that he used marijuana once or twice a week up until the time of the accident. See Hazlett Deposition at pp.83:19-24, 86:21-24, 87:1-6, Exhibit "B".

Under these circumstances, it is highly extraordinary that any action on the part of ExpressJet caused Plaintiff's injury. To the contrary, it is equally plausible, if not more so, that Plaintiff's injury was the result of a medical condition, such as a seizure (as indicated in the Rhode Island medical records) or the effects of alcohol withdrawal. Moreover, it is equally plausible that Plaintiff simply tripped over his own two feet.

Based on the above, it is clear Plaintiff is unable to show that any conduct of ExpressJet was so closely connected to Plaintiff's injuries to justify the imposition of liability and therefore, Plaintiff is unable to establish legal causation. Plaintiff's unsupported allegations that ExpressJet caused his injuries are nothing more than "mere speculation or conjecture" and are insufficient to permit this case to proceed to a jury. See Galullo, supra. As such, ExpressJet is entitled to summary judgment as a matter of law.

13

## IV.    <u>CONCLUSION</u>

For all the reasons set forth above, Defendant ExpressJet Airlines, Inc., respectfully requests that this Honorable Court grant its Motion for Summary Judgment and enter an order dismissing all claims against Defendant ExpressJet Airlines, Inc. with prejudice.

Respectfully submitted,

COZEN O'CONNOR

BY: _____

Ann Thornton Field, Esquire
Identification No. 52130
Denise H. Houghton, Esquire
Identification No. 54989
Sara Anderson Frey, Esquire
Identification No. 82835
1900 Market Street, The Atrium
Philadelphia, PA  19103
(215) 665-2000

Date:  July 25, 2003

14

## CERTIFICATE OF SERVICE

I, Sara Anderson Frey, Esquire, attorney for Defendants, ExpressJet Airlines, Inc., do hereby certify that a copy of Defendant's Motion for Summary Judgment and Memorandum of Law in Support thereof, has been served upon opposing counsel via first class mail, postage prepaid this 25th day of July, 2003, as follows:

Gavin P. Lentz, Esquire
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA  19102

_____
Sara Anderson Frey, Esquire