# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
|                          |   :   |
| **JAMES M. HAZLETT**     |   :   |
|                          |   :   |
|          Plaintiff,      |   :   |
|                          |   :   | CIVIL ACTION
|      v.                  |   :   |
|                          |   :   | NO.: 02-CV-4840
| **EXPRESSJET AIRLINES, INC.,** | : |
| **et, al.**              |   :   |
|                          |   :   |
|          Defendants.     |   :   | **JURY TRIAL DEMANDED**

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2003, upon consideration of Defendant, ExpressJet Airlines, Inc.'s Motion for Summary Judgment, Plaintiff's Opposition thereto, and the record as a whole, it is hereby **ORDERED** and **DECREED** that Defendant's Motion for Summary Judgment is **DENIED**.

BY THE COURT:

_____
The Honorable J. Curtis Joyner

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES M. HAZLETT** | : | |
| | : | NO.  02-CV-4840 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **EXPRESS JET AIRLINES, INC. et al.** | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |
| | : | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT,

## EXPRESS JET AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Michael James Hazlett ("Mr. Mr. Hazlett") by and through his undersigned counsel, Bochetto & Lentz, P.C., hereby submits his Opposition to Defendants' Motion for Summary Judgment, and in support of his Opposition, incorporates by reference his accompanying memorandum of law and exhibits, as though fully set forth herein.

Respectfully submitted,

By: _____
Gavin P. Lentz, Esquire
Vincent van Laar, Esquire
**BOCHETTO & LENTZ, P.C.**
Attorneys for Plaintiff
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | : | |
| **JAMES M. HAZLETT** | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO.: 02-CV-4840 |
| **EXPRESSJET AIRLINES, INC.,** | : | |
| **et, al.** | : | |
| | : | |
| Defendants. | : | **JURY TRIAL DEMANDED** |
| _____ | : | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HIS OPPOSITION TO DEFENDANT,
EXPRESSJET AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

_____Plaintiff, Michael James Hazlett ("Mr. Hazlett") sustained a severely broken jaw and loss of teeth due to Defendant, ExpressJet Airlines' ("ExpressJet") negligence which caused Plaintiff to fall head first onto the tarmac while de-planing.  Mr. Hazlett fell from a small retractable airplane stairway operated by ExpressJet that was permanently attached to the plane.[1] The stairway from which Mr. Hazlett fell had only one handrail rail and did not provide continuous rail protection. Moreover, it was not fastened to the tarmac, had a dangerously steep angle and was wobbly when walked on.  Despite Defendant's knowledge of the dangerous condition of the stairway, they failed to provide any assistance to Mr. Hazlett who fell from the unsteady stairway while he was carrying two pieces of luggage, causing him to sustain significant permanent injuries, requiring surgical procedures.

---

[1]    The flight was a Continental Express flight, and but was operated by ExpressJet Airlines, Inc.  The ramp agents were employed by Continental.  (Dep. Dudda, p. 8, Ex. "G.")

ExpressJet erroneously argues that Mr. Hazlett's negligence claim is barred because it is preempted by the Federal Aviation Act ("FAA").  Defendant also argues that Mr. Hazlett cannot establish Defendant's conduct proximately caused his injuries.  Both arguments lack any merit and Defendant's motion must be denied.

The FAA does not apply to the instant litigation because it does not involve the "operation of an aircraft" as intended by the Legislature.  Rather, this case involves the negligent conduct of ExpressJet's ground personnel (ramp agents) who failed to recognize the dangerous situation and provide assistance to Mr. Hazlett as he was deplaning.  Defendant's negligence is a direct violation of its own ground manual and operating procedures, which instructs ramp agents to ensure the safety of passengers while embarking or deplaning.  The FAA is therefore not applicable.

However, even assuming that the FAA is applicable, Plaintiff's negligence claim is not barred because ExpressJet breached the general standards of care as set forth by federal regulations relating to air safety.

Finally, Mr. Hazlett has set forth admissible evidence clearly establishing all elements of his negligence claim. In that regard, Mr. Hazlett testified that he lost his balance because of the steep, unsteady steps, that wiggled and that no assistance was provided to him while deplaning causing him to fall and strike his face on the tarmac.

For all of these reasons, Defendant's motion for summary judgment lacks merit and should be denied. ___

## COUNTER-STATEMENT OF FACTS

On Thursday, before Labor Day in 2000, Plaintiff, Mr. Hazlett, a highschool teacher at Souderton Area Highschool since 1986 was traveling with his companion Beryl Lynne Martin

("Ms. Martin") to attend a wedding in Warwick, Rhode Island.[2]  Tickets to fly from Newark,

New Jersey to Providence, Rhode Island were purchased from Defendant airline.[3]  The

plane,(a ATR-72 model) was a twin engine that had four seats across and has a retractable

stairway which is a permanent part of the aircraft.[4]  The stairway has only one handrail and

does not provide continuous rail protection on both sides of the stairway from aircraft door to

ground surface.[5]  The plane was delayed approximately an hour and a half in Newark.[6]

When it finally arrived in Providence, Mr. Hazlett got his carry-on luggage (two bags

and a camera bag) from the overhead compartment.[7]  Ms. Martin went first down the

stairway.  When Mr. Hazlett deplaned he lost his balance because of the steep, unsteady steps,

that "wiggled".[8]  Mr. Hazlett did not see anybody to ask for assistance, nor was any assistance

offered or warnings provided, despite the fact that Mr. Hazlett was carrying two carry-ons,

and despite the fact that the stairway only provides for one handrail that does not continue to

---

[2]      See Dep. Mr. Hazlett, pp. 16-18, 51, 60, 65, attached hereto as Ex. "A"; Dep. Ms. Martin, p. 12, attached hereto as Ex. "B."

[3]      See Dep. Mr. Hazlett, pp. 60-61.

[4]      Dep. Mr. Hazlett, p. 62.  Moreover, the ATR-42s and ATR-72s are no longer in service and were sold months after the accident.  See Dep. Iannella, pp. 57-58, attached hereto as Ex. "C."

[5]      See Dep. Mr. Hazlett, p. 62.  See also Expert Report of E. Patrick McGuire, attached hereto as Exhibit "D."  See Photograph and Diagrams of an ATR-42, attached hereto as Ex. "E"; see also Dep. Iannella, pp. 15-18, (stating that the stairway Mr. Hazlett fell from is substantially similar to an ATR-42 stairway).

[6]      Dep. Mr. Hazlett, p. 61.

[7]      See Dep. Mr. Hazlett, p. 65.

[8]      See Dep. Mr. Hazlett, pp. 70, 79.  See also Dep. Ms. Martin, pp. 27, 32, stating that stairs were also steep.

the bottom of the steps.[9]  Mr. Hazlett further testified that he was watching where he was going at all times.[10]  He also testified that Defendants were hurrying because they were running behind.[11]

As a direct result of Defendant's inattention and negligent conduct, Mr. Hazlett fell on his face, fractured his jaw and lost numerous teeth.  His mouth was wired shut and to date he continues to suffer from severe pain from his ear down to his chin.[12]

## ARGUMENT

### A.    Standard of Review

Summary judgment is appropriate where "the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Moreover, the court is required, in resolving a Motion for Summary Judgment, to determine whether the record, viewed in the light most favorable to the non-moving party, reveals a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All facts and inferences are construed in the light most favorable to the non-moving party.  *International Union, United Automobile Aerospace & Agricultural Implement Workers v. Skinner Engine Company*, 188 F.3d 130, 137 (3rd Cir. 1999).  Applying the standard set forth above, summary judgment is inappropriate in this case as there are numerous genuine

---

[9]      See Dep. Mr. Hazlett, p. 78, 97-98.

[10]     See Dep. Mr. Hazlett, p. 75.

[11]     See Dep. Mr. Hazlett, p. 68.

[12]     See Dep. Mr. Hazlett, p. 47.

material issues of fact in dispute.

**B.    Plaintiff's Negligence Claims Are Not Preempted by the Federal Aviation Act.**

Defendant, ExpressJet argues that (1) the FAA applies to this litigation; (2) the FAA preempts any common law claims, and (3) because Plaintiff failed to plead a violation of the standard of care established by federal law, his claim cannot stand.

Defendant's argument is flawed because it erroneously assumes that the FAA applies to facts of this case. Moreover, its reliance on the cases *Abdullah v. American Airlines, Inc.* 181 F.3d 363 (3ʳᵈ Cir. 1999) and *Margolies-Mezvinsky v. US Air Corp.*, 2000 WL 122355 (E.D. Pa) for the proposition that the FAA preempts negligence claims of this type is misguided. In *Abdullah* and in *Margolies-Mezvinsky*, unlike this case, a plaintiff was injured during a turbulent flight as a result of the "operation" of an airplane in midair. *Abdullah*. 181 F.3d at 365; *Margolies-Mezvensky*, 2000 WL 122355 at *1. Relying on the FAA general regulation[13] involving the standard of care to be exercised by pilots and flight crew, the Third Circuit in *Abdullah* held that the plaintiff's negligence claim based on the <u>pilot</u> and <u>flight crew's</u> failure to take reasonable precautions in avoiding the turbulent conditions and in failing to give adequate warnings were preempted by the FAA. *Id.* at 368-372. This Honorable Court in *Margolies-Mezvensky* granted summary judgment, holding that, although the FAA was applicable, plaintiff failed to establish a duty owed by defendant and failed to create any material issues of fact on this issue. *Id.* at *2.

Here, Mr. Hazlett was not injured, as a result of the "operation" of the aircraft, but

---

[13]    This regulation provides: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another. 14 C.F.R. § 91.13.

rather due to Defendant's failure to provide any ground assistance to Mr. Hazlett when he was deplaning the aircraft from a stairway, which Defendant knew was dangerous. Such negligence does not involve the "operation" of the aircraft or concern aviation safety, as intended by the Legislature.[14] Thus, Mr. Hazlett's claim is not preempted by the FAA. Congress's objective in enacting the FAA was as follows:

> [T]he principal purpose of the [FAA] is to create one unified system of ***flight rules*** and to centralize in the Administrator of the Federal Aviation Administration the power to promulgate rules for the ***safe and efficient use of the country's airspace***.

*Abdullah*, 181 F.3d at 370. (citations omitted.)(Emphasis added.)  Pennsylvania and other federal courts have held that the FAA does not preempt these types of state common law negligence claims based on the failure to provide adequate assistance. *See e.g., Kay v. USAIR, Inc. CCAIR, Inc.*, 1994 WL 406548 (E.D. Pa. 1994) (plaintiff's slip and fall while disembarking from an aircraft not preempted); *Rivera v. Delta Air Lines, Inc.*, 1997 WL 634500 (E.D. Pa. 1997) (concluding that the FAA does not preempt an airlines' negligence in failing to provide services)*; Moore v. Northwest Airlines, Inc.*, 897 F.Supp. 313 (E.D. Tex. 1995)(the FAA did not preempt state law claims for negligence relating to the failure to provide passenger with services and personnel which would have assured his safety.)

As senior district Court Judge Van Artsdalen concluded in *Kay*:

> Indeed, such preemption would have the perverse effect of immunizing the airlines– uniquely among virtually all other industries– from the consequences of their own negligence.

---

[14]    The 1958 Act was intended to consolidate in one agency in the Executive Branch the control over aviation that had previously been diffused within that Branch. The paramount substantive concerns of Congress were to regulate federally all aspects of air safety, . . . and, once aircraft were in "flight," air -space management. *See Abduallah*, 181 F.3d 370.

*Id.* at *3.  Similarly, Justice Stevens, in *American Airlines, Inc. v. Wolens*, 513 U.S. 219

(1995) stated:

> "[s]urely Congress did not intend to give airlines free rein to commit negligent acts
> subject only to the supervision of the Department of Transportation." 513 U.S. at 237.
> (Stevens, J., concurring in part and dissenting in part).  Congress enacted the
> preemption provision "to ensure that States would not undo federal regulation with
> regulation of their own." *Morales*, 504 U.S. at 378.  Congress did not, however,
> intend to grant airlines immunity from negligence claims.  *Kay*, 1994 WL 406548 at
> *2.

*Rivera v. Delta Air Lines, Inc.*, 1997 WL 634500 at *6 (E.D. Pa.).        Based on the

foregoing, the FAA is inapplicable to the specific facts at hand, rendering Defendant's

preemption argument without merit.

### C.    Assuming *arguendo* that the FAA Applies, the FAA Does Not Bar Plaintiff's Negligence Claims.

_____Even assuming that the FAA applies to this case, Plaintiff's common law claims are not

barred.  The Third Circuit in *Abdullah* ---as well as this Honorable Court in *Margolies-*

*Mezvensky* ---concluded as follows:

> we find that state and territorial tort remedies can coexist with federal standards of care
> for air safety; thus, plaintiffs, who are injured during a flight as a result of the violation
> of federal air safety standards, may have a remedy in state or territorial law.

*Abdullah*, 181 F.3d at 376; *see also Margolies-Mezvensky*, 2000 WL 122355 at *2.

Here, although the federal regulations do not provide a standard of care in connection

with the deplaning of passengers from an aircraft, Defendant's careless conduct in not

providing assistance to Mr. Hazlett while he was deplaning, coupled with Defendant's

knowledge of the dangerous stairway constitutes a clear violation of the general standard of

care pursuant to federal law. *See* 14 C.F.R. § 91.13. Plaintiff's expert clearly expressed in his

report that this conduct constitutes negligence, rendering summary judgment inappropriate.

(See Plaintiff's Expert Report of E. Patrick McGuire, attached hereto as Ex. "D.")

**D.**    **Plaintiff's Has Clearly Established A Claim Based on Negligence**

To establish a claim for negligence, plaintiff is required to show the following elements; (1) a duty, (2) a breach of that duty, and (3) resulting damages proximately caused by Defendant's conduct. *See Galullo v. Federal Express Corp.*, 937 F.Supp. 392, 395 (E.D. Pa. 1996) (citations omitted.)

It is undisputed that Defendant owed Mr. Hazlett a duty as a passenger. In fact, Pennsylvania law is well established that the duty of an air carrier, in general, is to exercise the **highest degree** of care. *See Stewart v. Loughman*, 367 Pa. 486, 80 A.2d 715 (1951) (Emphasis added.); (*see also* Dep. Iannella, pp. 12-13, Ex. C, stating that ramp agents are responsible for the safety of customers with regard to deplaning and enplaning.) Moreover, ExpressJet's own Ground Manual emphasizes customer safety during deplaning and enplaning. The Ground Manual reads as follows:

<u>**CUSTOMER SAFETY**</u>

Employees are responsible for the safety of all persons on company property and/or on the ramp. . . . A Continental Express employee must be present any time a customer is on the ramp. During deplaning/enplaning, employees must:

Have a clear view of the customer's entire path between the aircraft and the terminal.

Ensure customers do not leave the designated boarding path.

Ensure no ground service equipment crosses the boarding path when customers are present.

(See Ground Manual, true and correct copies of relevant pages are attached hereto as Exhibit "F."); see also General Ramp Safety Manual, relevant pages attached hereto as Ex. "J"(providing guidelines for ground personnel relating to customer safety.)

ExpressJet breached its duty by failing to provide any assistance or warning to Mr. Hazlett when he deplaned the aircraft while carrying two carry-ons and a camera.  In that regard, ramp agent Mr. Iannella testified at his deposition that:

> It was our standard operating procedure that an agent be placed at the bottom of the stairs to offer assistance for people deplaning the aircraft *if they had any packages* . . . .

(Dep. Iannella, p. 35, Ex. "C") (emphasis added.)  No assistance, however, was ever provided to Mr. Hazlett.[15]    Moreover, ExpressJet  knew at all times that the staircase was extremely dangerous because of the size and the steepness of the steps, and because only a single handrail was present which did not continue to the last bottom steps.  (Dep. Dudda, p. 28, attached hereto as Ex. "G.")  Plaintiff's liability expert report concluded:

> In my professional opinion, within a reasonable degree of scientific certainty, the ramp crew did not meet its responsibilities in assuring that each passenger traversed the door/stairway without tripping, misplacing a step or losing their balance.  This inattention and failure to recognize and respond to this hazardous condition, coupled with a stairway design that does not provide continuous rail protection on both sides of the stairway from aircraft door to ground surface, as well as the failure to assist the passenger, in my professional opinion contributed in a major fashion to causing the fall and to the severity of the injuries suffered by Mr. Hazlett.

(See Expert Report of E. Patrick McGuire, a true and correct copy is attached hereto as Exhibit "D.")

Defendant also breached its duty when its ramp agent  failed to maintain continued eye contact with Mr. Hazlett as he was coming down the stairway, and by failing to properly position himself at the bottom of the stairway, all of which proximately caused Mr. Hazlett's serious injuries. (See Plaintiff's Expert Report, Exhibit "D"); (*see also* Dep. Dudda, pp. 25,

---

[15]     Indeed, Mr. Dudda admitted in his deposition that no assistance was provided. Dep. Dudda, p. 29. Ex. "G."

Ex. "G", stating that he was not in the right position and that he lost eye contact). Defendant's further breached its duty when it failed to provide any warnings or instructions to Mr. Hazlett before he deplaned. (Dep. Dudda, p. 29, stating that he did not give any instructions or warnings.) Clearly, there is more than sufficient direct and circumstantial evidence for a jury to find Defendant was negligent.

Defendant mistakenly argues that Plaintiff does not recall how he fell by selectively referring to portions of Mr. Hazlett's deposition testimony which are taken out of context. (Def. Brief, p. 12.) Nevertheless, Defendant is wrong in stating that Mr. Hazlett does not know the cause of his fall. In response to Defendant's Interrogatory No. 2, requesting the following:

> Describe in detail your version of the Accident. Please include a description of the location, any persons present, and a description of the manner in which you allege the Accident occurred.

Plaintiff responded as follows:

> **RESPONSE:** See Complaint and Plaintiff's Human Factor's report to be provided. By way of further Answer, Plaintiff slipped and fell from the ramp steps and hit the tarmac as he was exiting the plane. Plaintiff was not properly assisted when he exited the plane and was unable to break his fall as there was not sufficient railing or staff in light of the steep angle of steps at issue and the number of passengers who were allowed to exit without restriction causing me to lose my balance. Persons who were present include Sam Beryl as well as other passengers.

(See Plaintiff's Response to Defendant's Interrogatories, a true and correct copy is attached hereto as Exhibit "H.")

Consistent with Plaintiff's verified interrogatory answer, Mr. Hazlett also testified during his deposition that he fell because of the steepness and unsteadiness of the stairway and because of the lack of a continuing handrail. (Dep. Mr. Hazlett, pp. 70-79). Mr. Hazlett

further testified that he was carrying two bags as he came down the stairs,[16] and that nobody offered him any assistance or warned him about carrying the bags down the stairs.  (Dep. Mr. Hazlett, p. 97-98.)

Plaintiff's expert report concludes that this conduct contributed in a major fashion to Plaintiff's fall and subsequent injuries.  (See Plaintiff's Expert Report of Patrick E. McGuire, Ex. "D.")  Clearly, Mr. Hazlett testified to the causes of his fall.  Defendant's Motion for Summary Judgement should be denied.

Moreover, numerous material issues of fact remain in dispute as to (1) whether the ramp agent, Mr. Dudda, was in fact present at the bottom of the stairway, (dep Ms. Martin, p. 30, stating that she did not see any ramp agents at the staircase); (*but see* Dep. Dudda, p.22-23, stating that he was at the bottom of the staircase); (2) whether the ramp agent was helping a passenger on the stairway versus aiding passengers on the ramp (dep. Dudda, p. 23-24, helping a passengers on the ramp); *(but see* dep. Iannella, pp. 35-36, helping passengers on the stairway); (3) whether multiple passengers were on the stairway at the same time (dep. Ms. Martin, stating that both Michael and she were on the stairway at the same time); (*but see* Dep. Dudda, 27-28, there's never at any time more than one person going down the stairs at the same time); and (4) whether Mr. Hazlett was carrying any packages and from which steps he actually fell.  (See Dep. Mr. Hazlett, p.65); *(but see* Dep  Dudda, p.28); (see also Defendant's Liability Expert Report, attached hereto as Exhibit "I").  Defendant's Motion for Summary Judgment is therefore inappropriate.

---

[16]       In direct conflict with Plaintiff's testimony as well as Ms. Beryl's, ramp agent Rick Dudda testified that Mr. Hazlett was not carrying any carry-ons.  (Dep. Dudda, p. 28.)

**E. ____Defendant's Unsupported Theories Of Plaintiff's Fall Create Additional Material Issues Of fact In Dispute.**

As set forth above, the record amply demonstrates the causes of Mr. Hazlett's fall. By way of summary, Mr. Hazlett fell because of the steep and unsteady stairs (Dep. Hazlett, pp. 70, 78, 79), the lack of a continuing handrail (dep. Hazlett, pp. 69-70, 72), because Defendant's ramp agent failed to provide any assistance or warnings, even though Mr. Hazlett was carrying two bags (dep. Hazlett, p. 65 ), because contrary to its own policy, Defendant's ramp agent failed to properly position himself at the bottom of the stairway and allowed multiple passengers on the stair case at the same time, (dep. Ms. Martin, p.28 );(*see also* Dep. Dudda, 27-28, there's never at any time more than one person going down the stairs at the same time.) Despite all of thsi overwhelming evidence of negligence, Defendant has manufactured other unsupported theories of plaintiff's fall. (Def. Brief, p. 12-13). None of these theories have merit in the context of Defendant's Summary Judgment Motion. In fact, they merely create additional material issues of facts in dispute, rendering this motion inappropriate on summary judgment.

Defendant's first unsupported theory is that plaintiff suffered from a seizure which caused him to fall. (Def. Brief, p. 12.) Mr. Hazlett, however, testified as follows:

Q: ***Have you ever had a history of seizures***?

A: ***Never***.

Q: Have you ever had a history of or experienced epilepsy?

A: Never.

Q: Have you ever had a history or experienced fainting?

A: Never.

(Dep. Mr. Hazlett, p. 96)(Emphasis added.)

Defendant also suggests, contrary to Mr. Hazlett 's deposition testimony, that Mr. Hazlett suffered from alcohol withdrawal, insinuating that this caused Mr. Hazlett to fall. (Def. Brief, p. 13.) Mr. Hazlett testified as follows:

> Q:     Okay.  Prior to the incident on August 31ˢᵗ, when did you have four or five drinks a day?
>
> A:     I did not.
>
> Q:     So--
>
> A:     ***Prior– prior to the incident , I did not have a drink even the day before***.

(Dep. Mr. Hazlett, pp. 84-85) ; (see also Dep. Mr. Hazlett, p. 63, stating that there was no alcohol served on the plane); (Dep. Mr. Hazlett, pp. 95-96, denying that Mr. Hazlett drank three to four drinks a day prior to being treated at Rhode Island.)   In fact, Mr. Hazlett testified that the doctor in the emergency room at Rhode Island Hospital was "looking at the chart of another person, saying that person had alcohol withdrawal." (Dep. Hazlett, p. 85.)

Defendant's alternative and unsupported theories of causation merely create additional issues of material fact for the jury to decide.  They do not support Defendant's request for Summary Judgment.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff, Michael James Hazlett, respectfully requests this

Honorable Court to deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**


By: _____

       Gavin P. Lentz, Esquire

       Vincent van laar, Esquire

       Attorneys for plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, August 25, 2003, a true and correct copy of Plaintiff's

Opposition to Defendant, ExpressJet Airlines, Inc.'s Motion for Summary Judgment and

accompanying memorandum of law and exhibits, was served via regular mail upon counsel for

Defendants at the following address:

> Ann Thornton, Esquire
> Denise H. Houghton, Esquire
> Sarah Anderson Frey, Esquire
> Cozen & O'Connor
> 1900 Market Street
> Philadelphia, PA 19103

Date: August 25, 2003                By:_____

                                         Vincent van Laar, Esquire